UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

               Plaintiff,

        v.

DIAZ CONSTRUCTION COMPANY, INC.,

               Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 25, 2013

12 Civ. 973 (PAC)

**MEMORANDUM & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") seeks enforcement of an arbitration provision in a "Payment Agreement for Insurance and Risk Management Services" (the "Payment Agreement") executed by Defendant Diaz Construction Company, Inc. ("Diaz"). In the alternative, National Union moves to have the Court find Diaz in breach of the Payment Agreement. (Compl., ECF No. 1.) Diaz moves to dismiss the Complaint for want of personal jurisdiction and because New York is an improper venue for resolving the parties' dispute. (ECF No. 11.) For the reasons set forth below, the Court DENIES Diaz's motion to dismiss, and GRANTS IN PART and DENIES IN PART National Union's petition to compel arbitration.

**BACKGROUND**

    **A.**    **Relevant Factual Allegations**

      Pursuant to the Payment Agreement between the parties, National Union, a corporation organized under the laws of Pennsylvania with a principal place of business in New York, provided Diaz, a California corporation, with commercial, general liability insurance and other services for losses arising out of Diaz's construction business. (Compl. ¶¶ 1–2, 5–6.) Under the Payment Agreement, National Union agreed to, inter alia, provide Diaz with insurance coverage and defer demand for full payment of the entire amount of Diaz's payment obligations, if Diaz

made partial payments according to the agreement; Diaz agreed to, inter alia, pay its payment obligations and provide collateral.  (Amato Decl. Ex. 2 at 3, ECF No. 18-2; Compl. ¶¶ 5–12.)  During the period covered by the insurance policy, a dispute arose between the parties as to certain deductibles, billings, payments, and reimbursements owed.  (Compl. ¶¶ 13–14.)

### B. The Arbitration Provisions

The Payment Agreement contains a section entitled "How Will Disagreements Be Resolved?," which states that as to disputes "about any amount of your payment obligation that we have asked you to pay . . . [a]ny disputed items not resolved within 60 days after our response to your written particulars must immediately be submitted to arbitration as set forth below."  (Ex. 2 at 8 (alterations omitted).)  The Payment Agreement further provides that "[a]ny other unresolved dispute arising out of this Agreement must be submitted to arbitration."  (Id.)

In this same section, the Payment Agreement sets forth the procedures by which any arbitration must take place, including how the arbitrators are chosen:

> You must choose one arbitrator and we must choose another.  They will choose the third.  If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so . . . either party may make an application to a Justice of the Supreme Court of the State of New York, County of New York and the Court will appoint the additional arbitrator or arbitrators.  (Id. (alterations omitted).)

In addition, the Payment Agreement provides that "[t]he arbitrators shall determine where the arbitration will take place.  The arbitration must be governed by the United States Arbitration Act, Title 9 U.S.C. Section 1, et seq."  (Id. at 9.)

### C. National Union's Demand for Arbitration

On August 9, 2011, National Union served Diaz with a demand for arbitration, seeking to recover the amounts National Union claims Diaz owes under the Payment Agreement, as well as other costs and expenses.  (Compl. ¶¶ 20–24.)  Diaz has not responded to National Union's

demand and has not complied with National Union's demand to arbitrate their dispute. (Id. ¶¶ 25–30.)

## DISCUSSION

I.  **THE COURT HAS PERSONAL JURISDICTION OVER DIAZ**

Diaz argues that since the Payment Agreement did not specify that the arbitration itself take place in New York, Diaz did not consent to personal jurisdiction in New York and the Court lacks jurisdiction over it. National Union responds that under the express terms of the Payment Agreement, should either party fail to appoint an arbitrator, the other party may seek judicial redress for the appointment of an arbitrator from the Supreme Court of the State of New York, and that this provision constitutes a forum-selection clause by which Diaz consented to personal jurisdiction in New York.

There is no dispute that under settled precedent, "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006) (citations omitted). In addition, the parties agree that a forum-selection clause providing for the jurisdiction of New York courts obviates the need to analyze jurisdiction in light of New York's long-arm jurisdiction statute and the parties' contacts with New York. See U.S. Bank Nat'l Ass'n v. Ables & Hall Builders, 582 F. Supp. 2d 605, 615 (S.D.N.Y. 2008) (Chin, J.); Sterling Nat'l Bank as Assignee of Norvergence, Inc. v. Eastern Shipping Worldwide, Inc., 826 N.Y.S.2d 235, 237 (1st Dep't 2006).

Diaz attempts to distinguish the Payment Agreement from a long line of cases holding that agreement to arbitrate in New York constitutes consent to personal jurisdiction by arguing that the Payment Agreement's provision that if a party fails to appoint an arbitrator, either party may move the New York Supreme Court to so appoint an arbitrator, does not confer personal

jurisdiction over Diaz because the Payment Agreement did not contain an explicit agreement to arbitrate in New York.  This argument is meritless.  The Supreme Court has repeatedly recognized that "because the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985) (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982)).  "[P]articularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction," id., and by agreeing to New York Supreme Court as the forum for enforcement of the agreement's provisions regarding the selection of arbitrators, the parties clearly consented to the jurisdiction of New York courts.  See D.H. Blair, 462 F.3d at 104 (broadly construing jurisdictional consent clause).

Given Diaz's consent to personal jurisdiction in New York pursuant to the Payment Agreement, the Court need not address Diaz's venue arguments.  See 28 U.S.C. § 1391(c)(2) ("For all venue purposes . . . an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]"); Doctors Assoc., Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996) ("Because Defendants consented to personal jurisdiction in the District of Connecticut . . . they also consented to venue there.").

## II. THIS DISPUTE MUST BE SUBMITTED TO ARBITRATION

To the extent Diaz contends that this matter is not arbitrable, Diaz is wrong.  In determining arbitrability, the Court is to look to the allegations of the party demanding arbitration;  if they fall within the scope of the parties' agreement, the Court compels arbitration.  Collins & Aikman Prods Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995).  Disputes over the

scope of arbitration agreements are resolved using ordinary principles of contract interpretation, id., and in light of the strong public policy in favor of enforcing agreements to arbitrate, any ambiguities regarding the scope of arbitration should be resolved in favor of arbitration. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) (citations omitted). While Diaz does not explicitly contest the arbitrability of the instant dispute, it is clear that this matter must be submitted to arbitration pursuant to the Payment Agreement.

### III. THE COURT LACKS AUTHORITY TO APPOINT AN ARBITRATOR

The only remaining question then is whether the Court may grant the full relief National Union seeks and name Diaz's party-appointed arbitrator. National Union argues that reading the Payment Agreement as authorizing only a Justice of the New York Supreme Court to appoint an arbitrator leads to an endless cycle in which if National Union seeks such appointment in New York Supreme Court, Diaz removes the action to federal court, recreating the present dispute without the possibility of resolution. National Union also argues that in light of the Payment Agreement's incorporation of the Federal Arbitration Act ("FAA") (see Ex. 2 at 9), under Section 5 of the FAA, the Court has the authority to appoint an arbitrator just as the Payment Agreement contemplates. Section 5 provides that:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or *if a method be provided and any party thereto shall fail to avail himself of such method*, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, *then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire*, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis added).

In a case examining identical language as the Payment Agreement regarding the appointment of arbitrators (and involving the same plaintiff as here), Judge Lynch found that the district court lacked authority to appoint an arbitrator and that any such appointment must come from New York Supreme Court.  See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Younger Bros., Inc., No. 00 Civ. 3277 (GEL), 2001 WL 669042, at *8 (S.D.N.Y. June 13, 2001).  Judge Lynch determined that under the FAA, "the only relief that this court may provide . . . is an 'order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'"  Id. (quoting 9 U.S.C. § 4).  Judge Lynch further held that "[a]ny authority to appoint an arbitrator, therefore, must be found in the agreement itself," and, just as in the instant action, "the parties endowed the New York Supreme Court, and not this Court, with the authority to appoint an arbitrator in the event that one of the parties refused to do so."  Id.

National Union argues that Judge Lynch did not consider Section 5 of the FAA and unnecessarily restricted the federal court's authority to appoint an arbitrator, but this argument misses the mark.  Judge Lynch merely interpreted and enforced the terms of the agreement itself as required by the FAA, and as mandated by the United States Supreme Court in the very caselaw National Union quotes in its memoranda.  See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 479 (1989) (noting "the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced *according to their terms*" (emphasis added)).

The Court further agrees with Judge Lynch's observation that now that the insured party has been ordered to submit to arbitration, the selection of arbitrators should proceed apace and the parade of horribles National Union predicts should be avoided.  See Younger Bros., 2001 WL 669042, at *8.  The Court also notes that in light of its ruling that Diaz is subject to

6

arbitration of this dispute pursuant to the provisions of the Payment Agreement, failure to comply with those provisions will constitute failure to comply with this Court's order.

## CONCLUSION

For the foregoing reasons the Court DENIES Defendant's motion to dismiss and GRANTS IN PART and DENIES IN PART Plaintiff's petition to compel arbitration. The Clerk of Court is directed to terminate the motions at docket entries 11 and 18, and to close this case.

Dated: New York, New York
March 25, 2013

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge